

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00019-CR

ANGEL DAWN REAVES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 30530

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Lamar County jury convicted Angel Dawn Reaves of two counts of felony bail jumping and failure to appear. *See* TEX. PENAL CODE ANN. § 38.10(f). After Reaves pled true to the State's punishment enhancement allegation, the jury assessed a sentence of four years' imprisonment. In her sole point of error on appeal, Reaves argues that the evidence was legally insufficient to support the jury's verdict. Because we disagree, we affirm the trial court's judgment.

## I.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Here, the State's indictment alleged two counts of bail jumping and failure to appear. Both counts alleged that Reaves intentionally or knowingly failed to appear in court on September 19, 2023, "after being lawfully released from custody on a pending felony on condition that she subsequently appear in court."

## II. Legally Sufficient Evidence Supports the Jury's Verdict of Guilt

"A person lawfully released from custody, with or without bail, on condition that [s]he subsequently appear commits an offense if [s]he intentionally or knowingly fails to appear in accordance with the terms of [her] release." TEX. PENAL CODE ANN. § 38.10(a). In challenging the sufficiency of the evidence, Reaves attacks the mens rea required for the offense. Specifically, she argues that the State failed to prove her actual knowledge of the requirement to appear in the trial court on September 19, 2023. Yet, we find that the State presented ample evidence of Reaves's knowledge of her court date.

At trial, the State introduced two jail release reports from Lamar County. The first report showed that Reaves was released on May 20, 2023, following an arrest for manufacture or delivery of four grams or more but less than 200 grams of a penalty group 1-B controlled

substance. The terms of Reaves's surety bond, which bore a cause number of 30286, required Reaves to "appear before any court or magistrate before whom the cause may hereafter be pending at any time when, and place where, h[er] presence may be required." On the bond paperwork, Reaves listed her address in Paris, Texas. The second jail release report showed that Reaves was released on June 15, 2023, after being arrested for manufacture or delivery of less than one gram of a penalty group 1 controlled substance.[1] Her surety bond, which listed the cause number for the offense as 30330, contained the same condition requiring Reaves's appearance in court when notified of the time and place of any hearing and listed the same address as before.

Next, the State introduced a September 1, 2023, letter from the Lamar County District Clerk mailed to Reaves's appointed attorney informing him of a pretrial docket setting in cause numbers 30286 and 30330 on September 19, 2023, at 1:30 p.m. The letter indicated that a carbon copy had been mailed to Reaves at the Sherman Street address. At trial, Suzanne Roberts, the chief deputy district clerk for Lamar County, testified that that letter was mailed to Reaves at the Sherman Street address and was not returned as undeliverable.

Gerry Don Hines, bailiff for the Sixth Judicial District Court of Lamar County, testified that he signed certificates showing that he called Reaves's name during the September 19 hearing three times each for cause numbers 30286 and 30330, but she was not there. As a result, the trial court entered judgments nisi forfeiting Reaves's bonds in those cause numbers.

---

[1]Failure to appear is a felony if the underlying offense for which someone fails to appear is also a felony. *See* TEX. PENAL CODE ANN. § 38.10(f).

4

Jeremy Helms, an officer with the Paris, Texas, Police Department, testified that he encountered Reaves on September 21, 2023, during a traffic stop and recognized her because he had "dealt with her multiple times in the past." Helms testified, and his body-camera footage from the traffic stop showed, that Reaves provided "a fake name." Helms also said he observed Reaves texting someone that she was "about to go to jail," and the body-camera footage showed Helms revealing the substance of that text to other officers at the scene. Helms testified that there was an existing warrant for Reaves's arrest and, when he asked her why she had provided a false name, she said, "[D]o you see what I got," which Helms interpreted as, "[D]o you see the warrants I have[?]"

Jonathon Smith, a captain with the Lamar County Sheriff's Office, testified that Reaves made a phone call from jail to "a family member and was talking about her bond." The State played the recorded call for the jury wherein Reaves said someone warned her that she would be jailed if she did not appear in court. Reaves said that she was aware of a court date but did not take a urinalysis and knew that, as a result, her bond would have been forfeited anyway. Reaves also added that she "was just trying to stay out [of jail] longer."

In her defense, Reaves testified that her grandmother lived at the Sherman Street address but that she did not. Reaves explained that she listed her grandmother's address because it was the best mailing address for her because she was homeless.[2]

As the trier of fact, the jury was free to disbelieve Reaves's self-serving testimony in favor of the State's evidence presented at trial. The State showed that Reaves was to appear in

---

[2]Although not presented to the jury during trial, we note that, on December 14, 2023, just before her January 24, 2024, trial, Reaves wrote a letter to the trial court informing it that her address was the Sherman Street address.

court on September 19, 2023, that her bond conditions required her appearance, and that the Lamar County District Clerk's Office notified Reaves of the court date by mailing notice to the address listed on her bonds and by notifying her appointed attorney. In light of Helms's testimony about Reaves's text message during the September 21 traffic stop and Reaves's jailhouse call, the jury was provided with sufficient evidence to conclude that Reaves had received notice of the September 19 court date, knew she could not pass a urinalysis, and instead decided to stay out of jail a little longer by intentionally or knowingly failing to appear. Her decision to provide Helms with a false name during the traffic stop was an additional indication of Reaves's guilt.

Because we find that legally sufficient evidence supports the jury's verdict of guilt, we overrule Reaves's sole point of error on appeal.

## III. Disposition

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: June 13, 2024
Date Decided: June 14, 2024

Do Not Publish